Good morning, Your Honors. May it please the Court, Stephen Teichert on behalf of Dora Gallegos, who is the substituted party for her late husband and the original plaintiff, Gerardo Gallegos. The issue in this case is the wording in the PLRA that a prisoner must exhaust administrative remedies as are available. That is the key language in this case. Here, the District Court dismissed Mr. Gallegos' claims based on the Court's assertion that Mr. Gallegos did not exhaust his administrative remedies. The Court erred for three reasons. First, the defendants have the burden to show that Mr. Gallegos did not exhaust the available remedies and they did not do so. Second, the PLRA presupposes that some remedy is in fact available through the administrative process. There is no such remedy here for the wrongs alleged by Mr. Gallegos, the past negligent medical care. The only possible remedy is monetary damages. Those are not available in California administratively. Lastly, even if Mr. Gallegos was required to exhaust, he did so both at the informal level before his surgery and at the formal level obtaining medical care while he was in prison. Can you clear one thing up for me? Sure. I think you said his claim is for past negligent conduct of his medical care. Yes. Is that correct? Yes. So his 602 grievance, which asked for lifetime medical. Yes. Is not the claim that he's pursuing now. Correct. The claim he's pursuing, the key point in time is the 1999 December operation he had to remove his cancer. The events leading up to that are the events that are the subject of the lawsuit, the negligent medical care leading up to that operation. Prior to that operation, Mr. Gallegos had no reason to believe that there was anything to complain about. One question is, even though he's complaining now about his past medical care, isn't there some, at the time he was complaining, isn't there some partial remedy for him in getting some additional medical care that might mitigate or alleviate or change the alleged medical negligence? Well, even if there were, he actually obtained that level of medical care. In the 602 appeal that he filed in September of 2001, he sought future medical care. At the second level appeal, they stated that he would receive medical care while he was incarcerated, but they could not provide future medical care once he was out of prison. So they provided that. I'm having trouble now because now it seems like the claims are merging again. In other words, he complained about, I guess, the diagnosis and treatment. Yes. And why wouldn't he have to exhaust that? And then he got his, he got some additional medical care, so I guess he doesn't have to do anything more about that. He doesn't have a complaint about that, right? Well, correct. Again, the key is. It is very confusing from the record. The key factually is the night of his surgery when he was taken out of prison and had his cancer removed. Prior to that point, he had no reason to believe he had cancer. You know, he believed he had stomach ulcers. He was given medication for those ulcers. And, in fact, when he was at the hospital, he protested getting the operation because he maintained that he only had ulcers. That was the medical diagnosis that he had obtained. Once he had that surgery, the wrongs that are complained of in this case had completely run their course. He had received negligent care that resulted in more serious cancer, that resulted in the removal of a portion of his stomach, and that resulted in a reduced life expectancy. That wrong was complete as of the date of his operation. After that operation, the future medical care that he would receive is not part of this lawsuit. This is about the compensation for his lost medical benefits and his lost, you know, the portion of his stomach and the poor treatment that he received. That's what this case is about, and that's the key distinction. If I understand you quickly, he wants money damages. Correct. It's money damages for future care or money damages for past harm. It's money damages to compensate him for past harm. Is it basically a misdiagnosis case or a failure to diagnose? Essentially, it's negligent. You're looking at a medical malpractice term. Yeah, it would be. I'm not familiar with malpractice terms, but it would be the negligent medical care he received that led up to his surgery and the misdiagnosis of cancer. That is the key distinction. And you're saying that there's nothing, there's no administrative remedy? That's correct. Because the only way to compensate for that misdiagnosis and, you know, his lost portion of his stomach is monetary damages. There is no other remedy available. If, you know, a diamond ring is stolen from a jewelry store, the only possible redress is to get the ring back or to get money damages for that. He can't get his stomach back. The only possibility is financial. Well, the difficulty I have is that the cases have been a little difficult for you, because they say even if you're asking for money damages, there are other reasons to exhaust, and you must exhaust. And we're bound by that. Why doesn't he still have to exhaust even though he's suing for money damages? Well, I understand that. And the key of those three cases, all three of those cases basically stand for the proposition that where a prisoner seeks money, he must still exhaust as long as there is some available administrative remedy. Okay. Here, there is no available administrative remedy. Well, that's the point. I understand that sounds logical, but there are some cases that think to the contrary, on the basis, A, that it's good for them to go talk to the public. That's been involved in cases. B, it's good for the service because they can then correct what they've done in the past. Although he's not getting money damages, the cases indicate there's still a reason to exhaust. Assuming we're bound by those cases, how do you handle the issue? Well, there is a distinction between those cases. The Booth case specifically states that without any available remedies, there would be nothing to exhaust. Quoting from Booth, the modifier, available, requires the possibility of some relief for the action complained of. Also from Booth, without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust. That is precisely the situation here that Booth provided for. Now, the policy reasons Is it really precisely the same? It doesn't mention going to talk and venting, which seems to be considered part of the exhaustion process, nor does it mention that they can make modifications on how they handle their prison, hospitals, et cetera. Well, I think Booth and Woodford and Porter all identify the same policy reasons. Two of those are it gives the agency the opportunity to correct its mistakes. Once Mr. Gallegos had had the cancer operation and part of the stomach removed, there was nothing anybody could do to correct that mistake. For him. For him, correct. But the idea of these one of the ideas of the exhaustion is to correct it for other people. Institutional change, that won't occur unless he exhausts. Well, I think that would occur if a significant, you know, financial verdict is reached in the prison as well. That isn't what they seem to think that these exhaustion remedies are for. They are not just for the individual. They're institutional, too. And I understand your position, and it seems rather far-fetched, but we've got what we've got that we're bound by. How do we write an opinion that says it doesn't make any difference that you say he can go vent or that this gives the prison officials an opportunity to modify past poor conduct? In this case, we will, and then what would we say? Well, because the difference is where there is no, where there is nothing the prison can do to correct the wrong for that prisoner, then there is no. You see, you just put in for that prisoner. But they're saying, for that prisoner or not, it will help the institution because we can correct for other prisoners. But I think that means is also achieved by going through the legal process as well. I don't think the PLA provides that a prisoner must go through an administrative process needlessly when there is nothing that can be gained by the prisoner for that, for going through that process. You might want to save some time for rebuttal. Yes, I will do that. I have just over a minute left. Yeah, I will do that now. You have a minute left. I will do that now. Thank you. You might want to save that. Yes, thank you. Good morning, Your Honors. David Taglianti, Deputy Attorney General on behalf of defendants and appellees, Dr. Sunil Walia and Dr. John Parsons. The central issue here, as the Court knows, is whether or not Mr. Gallegos, a state inmate at all relevant times, had an obligation to exhaust his administrative remedies under the Prison Litigation Reform Act. It's our position that he did, and he was complaining about the 1998-1999 medical care at Sentinella State Prison, and he went to the second level, and at the second level it was rejected. And even though he was given an opportunity and, indeed, had the obligation to go to the director's level, the final level, he failed to do so for unknown reasons. With regard to the burden that counsel talks about. Could I ask you about that? Maybe this goes to my question to Mr. Gallegos' counsel. There's several things going on here. There's this past sort of failure-to-diagnose problem with the cancer. Then there's his grievance where he says, you should give me lifetime care, especially even after I get out of prison. The prison owes me this. And it seemed to me that when you're talking about exhaustion, that the only evidence of non-exhaustion really related to that 602 claim, which doesn't seem to have anything to do with his other claim. Could you give me your take on that? Your Honor, if I understand you correctly, you're making a distinction or trying to draw a similarity between the 602 appeal that was filed in September 2001 and the 602 appeal that was filed in December 01. I mean, there's two separate appeals, correct? There is. The 602 appeal that's relevant in this particular case is the one that was filed in September of 01. There is no dispute in the record that the allegation in that 602, the problem, as it was described by Mr. Gallegos, was the medical care that he received at Sentinel Estate Prison in 1998 and 1999. It's directly applicable to this case. And that was the appeal he needed to exhaust, which he didn't exhaust. And I might add that the parties were given an opportunity in supplemental briefing to speak to the issue of McKinney, which essentially says that you have to completely exhaust before you can go forward through a 1983 civil action for damages. So then can I just stop there? Okay. Then we have this Brown case and others. If he kind of gets what you could get out of the exhaustion, then it seems you can stop. So I'm wondering, you know, as counsel said, can't get his stomach back, but there could be additional medical care for him, which seems why he should likely have to exhaust. But then he got that care, and once they say, well, we're going to give you some additional care, what more was there for him to exhaust at that point? What he needed to do with regard to the September 2001 appeal was to take the second level rejection, with which he might have been satisfied, but we don't know because there's nothing in the record to that effect, and go to the director's level. The director is the final arbiter, and the person with the authority to take some action in addition to what's already been provided that may mollify the passion and appease the plaintiff in this case and promote precisely what the PLRA is enacted to promote, which is to eliminate or reduce significantly the number of frivolous lawsuits that are filed in our district courts and to allow the administrative body to work through the alleged deficiency and correct itself if possible. In this particular instance ---- Kagan. Well, maybe the confusion is in the district court, then, because when the district court talks about your client meeting the proof of exhaustion, I thought it referred to the 602 claim related to future medical, which, of course, you've now clarified that doesn't have anything to do with it. But if you look to the district court, isn't that what Mr. Engler's affidavit talks about?  Mr. Engler's declaration, Your Honor, speaks specifically to the 602 appeal that was filed by Mr. Gallegos at CMC in September of 2001. And that was the only appeal that the district court below was relying upon in concluding correctly that Mr. Gallegos had not exhausted his administrative remedies. The December of 2001 appeal came up only with regard to what remedies might have been available to Mr. Gallegos in response to counsel's argument that there has to be some possibility of relief and that the defense didn't meet its burden. But, indeed, they admitted that the December. Can I stop you, though? I mean, this is where I'm having trouble with this. It's like everybody's talking past each other. When they reject his appeal, he says, You requested all future medical treatment, dah, dah, dah, dah, dah. It's rejected. We can't give you that. This is not the appropriate process for that. So I feel like I'm in a bit of an administrative tangle here, because that's what it says. It's talking about future medical treatment. It is, Your Honor, except that we have to look, and I would hope the court would look, much like the district court did, at the problem that's identified by Mr. Gallegos in that 602 appeal, which was the basis of our argument that he didn't exhaust to the final level. The problem, as identified in that 602 appeal, is the 1998-1999 alleged malpractice, or in this case deliberate indifference, that was practiced by the doctors at Sentinel State Prison. That was the only appeal that the district court relied upon below correctly in concluding that Mr. Gallegos had not gone to the third level. I understand the court's concern with the ---- Well, the problem I'm having is this, is that if that's the appeal, they tell him here you can't use that appeal. In other words, you're saying the appeal really relates to his underlying problem, which I understand. But then the Department of Corrections is saying this isn't the right process. So if I read this as a lawyer, I'd say I don't know what to appeal. They're telling me I'm not even in, you know, the right ballpark here. So what's the ---- I mean, that's where I'm having some trouble. Dr. Myers, in responding to Mr. Gallegos' appeal at the second level, essentially said that this is not the process by which you get post-care future ---- I'm sorry, post-incarceration medical care. He's not saying that the 602 appeal is somehow unrelated. He's basically saying this is ---- we understand your problem. He says that's the reason it's rejected. In other words, he's saying it's rejected because you asked for lifetime medical care. He's not saying it's rejected because we think we didn't do anything wrong to cause your cancer diagnosis. So that's where I'm having a gap. He's rejecting it, Your Honor, as I understand his statement, for the same reason that Booth would have rejected it, and that is that he's asking for money damages. The appeal process, the 602 appeal process, which clearly deals with inadequate medical care as a typical sort of grievance, allows or does not provide for money damages, does not provide for post-incarceration future medical care. And I would draw a connection, or it's equivalent, if you will, money damages and future post-incarceration medical care. It's exactly the same. And so what Dr. Myers was saying is that this system does not provide for that remedy, and precisely what Booth was saying is it doesn't matter what relief you were seeking. You must exhaust your administrative remedies. It doesn't matter that the system does not provide for that remedy. So in other words, what Dr. Myers was saying is essentially ---- So in other words, you lose, but you should appeal so you can lose again. No. I'm just asking you, you're saying he needs to take this to the third level. You lose, but appeal again so you can lose, because I'm telling you, you can't get what you want. Dr. Myers at the second level is saying not you lose, simply that you're not entitled through this process to post-incarceration medical care. He says your appeal is rejected. I don't know. That seems like you're losing. So I mean, what you're saying is that you need to take this piece of paper and ask one more person in order to exhaust. Is that right? Precisely, Your Honor. The form itself is very clear. Mr. Gallegos, the record is clear. It was very well acquainted with the 602 appeals process. The statement at the bottom of the 602 appeals form says, if dissatisfied, attach your documents, and within 15 working days, submit those documents in this appeal to the appeals coordinator. For some reason, that was not done. It's our position that because Mr. Gallegos did not appeal the second-level rejection of his 602 appeal in September of 2001, that he did not exhaust his administrative remedies. But secondarily, as the parties referred to in supplemental briefing, the McKinney case would permit this Court to affirm the judgment below simply because he had not completely exhausted the September 01 appeal by the time he filed the action in October of 2001. Thank you. Thank you very much. I have another question, if you wouldn't mind. I just want to get this clarified, what the position, what your position is. I have been reading a lot of these cases where one of the reasons for exhaustion is institutional concerns. That is, not for the benefit of the individual, but for other prisoners as well as that individual, by changing policies, et cetera. And it struck me that maybe that is reasonable. But in reading the Brown case, and this is not clear language, but in reading the Brown case, it says that he need not press on to exhaust further levels of review once he has either received all available remedies or has been told they're not available. That language strikes me as the exhaustions for the benefit solely of the prisoner and not of the institution. What's your position on the nature of exhaustion in relationship to this issue? That is, does exhaustion also require, required so that there can be institutional concerns attended to? Our position is very clear that there does need to be exhaustion for purposes of, among other things, to allow the institution to correct deficiencies and to modify its procedures. And that would have happened in this particular case, assuming that there was indeed a deficiency, and we contend there isn't. But if there was a deficiency, had Mr. Gallegos filed a 602 appeal in 1998 or 1999 when he was at Sentinela State Prison and not waited some 20 months after the gastric surgery in December of 1999 to file a 602 appeal in September of 2001, they could have addressed that issue. That's one of the important factors or circumstances promoting the Prison Litigation Reform Act and the basis for exhaustion. Okay. Thank you. I understand your point. Thank you. Why shouldn't he have taken this piece of paper where it says you have 15 more days and just completed his exhaustion? Well, the, it is not necessarily clear that he did not do that. The burden is on the defendants to show that he did not file a third-level appeal. There is no affidavit that this, you know, inclusion of the first and second-level appeal is a complete record. There is no affidavit stating that there was no third-level appeal. That burden is squarely on the defendants, as evidenced by Wyatt. The exact same situation occurred in the Wyatt case, and the Court found that there was no clear evidence that exhaustion was not achieved. But we don't have a report from the third level in this file than we do have from the second level. So isn't that some evidence that nothing happened? Not according to Wyatt. It is not. In other words, they have an affirmative burden to say it didn't happen? Correct. Correct. And they didn't do that. Thank you. They have a burden to establish a separate affirmative defense. But what case says that the, that the administration of the prison has to file proven negative? The Wyatt case states that a defendant in, that the burden of showing a failure to exhaust is placed squarely on the defendants. They show that it doesn't exist in their files. Then any excuse for that has to come from the prisoner, right? But Wyatt rejected that exact same argument. Beg pardon? The Wyatt case rejected that exact same argument. There, the defendants attached an appeal stating that this was it. But they did not have an affidavit from anybody with knowledge of the, of how those things work. And that, that was, in fact, a complete record. Just attaching a first-level appeal does not, is not sufficient evidence to show that there was no exhaustion. Thank you. Case just argued. Gallegos v. Parsons is submitted.
judges: Wallace, Farris, McKeown